**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

IN RE:

**LLOYD CHRISTIAN FITCH**                                                              **CASE NO. 12-21191**

**DEBTOR**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the Chapter 13 Debtor Husband's (the "Husband") objection to the claim of his ex-wife, Leticia Marie Fitch (the "Wife"). The Wife filed a proof of claim (POC #6-1)[1] (the "Claim") for a domestic support obligation ("DSO") in the amount of $55,280.50. The Debtor objects to the Claim [Doc. 20 & 21] and argues that the debt is not a DSO and should therefore be treated as a general unsecured claim. On November 29, 2012, the Court held an evidentiary hearing on the Husband's objection to claim to determine whether the Wife's Claim is a DSO and thus entitled to priority status. Upon consideration of the parties' stipulation of facts, testimony and exhibits admitted into evidence, as well as the arguments of the counsel, the Court finds that the Husband's objection is not well-taken and the Wife's Claim is a DSO entitled to priority status pursuant to 11 U.S.C. § 507(a)(1).

**Facts**

The Husband filed for Chapter 13 relief on June 19, 2012. On Schedule F, he lists a debt owed to the Wife based on a July 22, 2010 judgment entered in the Davidson County, Tennessee Circuit Court, Case No. 09D-3492, in the amount of $62,356.24. Concurrent with the filing of the petition, the Husband filed a Chapter 13 plan (the "Plan") that proposes to pay all unsecured nonpriority claims *pro rata* to the greatest extent possible.

---

[1] The Wife amended her proof of claim (POC #6-2) to add documentary support, i.e. the Divorce Decree.

1

On July 24, 2012, the Wife filed her Claim for $55,290.50 as a DSO entitled to priority pursuant to § 507(a)(1).  The Wife then filed an objection to confirmation of the Husband's Plan [Doc. 14] based on its failure to treat her Claim as priority debt.  The confirmation hearing was continued [Doc. 18] and the Husband thereafter filed the objection to the Wife's Claim [Doc. 20 & 21], taking issue with its characterization as a DSO, but not with its validity or amount.[2]

The Wife responded [Doc. 25] to the Husband's objection to the debt's characterization by arguing the Tennessee State Court already characterized the debt as a DSO and an adversary proceeding is required to determine the issue.  Following the Husband's reply [Doc. 27] in support of his argument, the Court held a hearing on the matter [Doc. 28] and issued an order ruling that an adversary proceeding was not necessary to resolve an objection to the characterization of the claim as a DSO for priority status.  The Court then set the matter for an evidentiary hearing pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007, and Fed. R. Bankr. P. 9014 [Doc. 31].

An evidentiary hearing was held on November 29, 2012.  Only the Husband and Wife testified.  The Husband did not introduce any exhibits but the Wife introduced the July 22, 2010 judgment entered by a Tennessee State Court, exhibits relating to the parties' prior Chapter 13 bankruptcy, and payroll records for her and her Husband.

The Wife's testimony provides much of the background related to the parties' relationship and the debt at issue.  The Wife testified that she was married to her Husband from 2000 until 2010.  During that time, she and her Husband used separate banking accounts and filed separate tax returns.  She testified that during her marriage she never saw her Husband's paycheck.

---

[2] No challenge to the claim's dischargeability is made because, as conceded by the Husband, he is not entitled to a discharge pursuant to 11 U.S.C. § 1328(f)(2).

2

On June 30, 2005, she and her Husband jointly filed for Chapter 13 bankruptcy relief in the United States Bankruptcy Court for the Middle District of Tennessee, Case No. 05-07811, due to her Husband's failure to pay certain self-employment and income taxes. The Husband and Wife received their discharge on November 5, 2010. Pursuant to the Wife's testimony and exhibits, including a Chapter 13 Trustee's Final Report and Account, the Wife paid a total of $122,100.00 into the parties' plan without contribution from the Husband. From this amount the following debts were paid: (1) approximately $65,000.00 in taxes owed by her Husband; (2) approximately $40,000.00 of her Husband's ongoing child support obligation and arrearage; and (3) $8,000.00 for her Husband's vehicle to complete the parties' plan. After making the plan payments, the Wife was left with approximately $19.00 per week remaining from her paycheck. She and her Husband lived off money borrowed from her parents.

In the fall of 2009, prior to completion of their Chapter 13 bankruptcy, the parties separated and the Wife filed for divorce in Tennessee State Court on December 10, 2009. The Husband was personally served but did not appear and the Wife was granted a default judgment against the Husband on June 11, 2010. On June 22, 2010, the Tennessee State Court entered a Final Decree of Divorce (the "Divorce Decree") finding:

> The Husband has been financially irresponsible during the marriage.
>
> The Husband failed to pay self-employment taxes causing the parties to file for Chapter 13 bankruptcy.
>
> The Wife has paid the entire Chapter 13 Bankruptcy with no contribution by the Husband.
>
> The total paid by the Wife for the Chapter 13 Bankruptcy is $121,160.00.
>
> The Husband shall be responsible for payment of one-half of the $121,160.00 that the Wife paid for the Chapter 13 Bankruptcy, that amount being $60,580.00. The Wife shall be granted a judgment against the Husband in the amount of $60,580.00.

Finding that the "Husband's financial irresponsibility is a key factor in the Court's disproportionate division of property in this cause [sic]," the Tennessee State Court "**ORDERED, ADJUDGED AND DECREED** that the Husband shall pay $700.00 per month directly to the Wife" to liquidate the judgment. The Court affirmatively stated that "[t]hese payments are deemed necessary for maintenance and support of the Wife."

The Wife credibly testified that her present financial situation is similar to her financial condition at the time of the divorce. The Wife is currently employed with a salary of approximately $31,000.00 per year. She was awarded the couple's premarital residence in the Divorce Decree, but it is not habitable due to unfinished repairs begun by her Husband during their marriage and, thus, she currently lives with her parents. She cannot rent the residence due to its condition or afford to complete the necessary repairs. The Wife further cannot make the $500.00 per month mortgage payments, but with the assistance of her parents she is current on the mortgage and homeowners' insurance. She incurs approximately $100.00 per month in medical bills and cannot afford health insurance, which she estimates to be approximately $250.00 per month. The Wife owned a vehicle at the time of the divorce, but it was in need of repairs and is no longer running. She recently purchased her first car since the late 1990's and her current payment on the vehicle is $314.00 per month. Her parents continue to supplement her income to help with her living expenses.

The Wife testified she would not be in such financial straits if she had not funded the parties' joint Chapter 13 plan without assistance from her Husband. According to the Wife, the Tennessee State Court was aware of the parties' Chapter 13 bankruptcy and her financial circumstances at the time the Divorce Decree was entered and thus the State Court subsequently awarded her half the payments made in the prior Chapter 13 plan. The Wife testified that her Husband was unemployed at the time of the divorce but working "under the

4

table." She believes the State Court had information about her Husband's financial situation at the time it entered the Divorce Decree.

The Wife further testified that she relied on the $700.00 per month payments from her Husband for her livelihood until April 2011, when the Husband ceased making the payments. She attempted to file civil contempt charges against the Husband, but she was unable to proceed with the state court contempt action because her Husband filed his current Chapter 13 bankruptcy.

In contrast, the Husband testified that he and his Wife operated as one economic unit while they were married and all income was used for household expenses. According to him, everything was equal – he would pay some expenses and she would pay other expenses.

The Husband testified that he believes he was "railroaded" in the divorce. According to the Husband, despite his knowledge of the divorce proceedings, he did not appear or hire a lawyer because he believed that he and his Wife had an "understanding" and his presence was unnecessary. The Husband does not dispute that his unpaid taxes, child support, and vehicle were paid through the couples' Chapter 13 plan, but he does dispute that he did not contribute. According to the Husband, he paid $150.00 per week toward the parties' Chapter 13 plan payments via money order and was paying for "all other bills."

Despite the Husband's testimony that he contributed to the parties' Chapter 13 plan and he was "railroaded" in the divorce, the Husband offers no proof in support and his testimony is not credible. The Husband gives no valid explanation for his failure to participate in the divorce proceedings and cannot offer testimony as to the evidence considered by the Tennessee State Court. Moreover, he testified that at the time of the divorce his Wife was making more money than he as he was unemployed in 2010, earning only $3,613.00 in self-employment income. Incredibly, this testimony notwithstanding, the Husband would have this Court believe that he

was able to make payments of $150.00 per week toward the Chapter 13 plan and pay all other expenses. This is neither feasible nor believable.

An affidavit by the custodian of payroll records of the Husband's employer, introduced by the Wife, shows that the Husband earned no income from that employer in 2009, $44,567.50 in 2010, and $81,607.01 in 2011. The parties stipulated that the Husband earned $59,419.00 in taxable income in 2011 and $49,510.00 in taxable income through October 31, 2012. It is apparent to this Court that the Husband's reported financial circumstances at the time of the divorce do not accurately reflect his earning capacity or his earnings.

The Husband's current financial situation, as reported in his Schedules, does not bolster his credibility. The Husband stipulated that he is currently self-employed in the commercial laundry business and his monthly income is $4,951.58, yet he lists his income in Schedule I as $6,800.58. On Schedule J, he lists his current monthly expenses as $5,999.00. According to the Husband's testimony and the Schedules, these expenses include $1,000.00 per month in rent, $500.00 per month for two vehicles as well as ongoing child support payments of $500.00 and expenses for his unemployed fiancé, son, and his fiancé's two children. The remaining $801.58 of his monthly net income is paid to the Trustee to fund his Chapter 13 Plan. Despite budgeting $500.00 per month in child support payments, the Husband fails to list his seventeen year old daughter as a dependent on Schedule I. Moreover, his budget fails to include any provision for the payment of taxes or the obligation he owes to the Wife. It is apparent that the Husband is not being candid with this Court and is attempting to cherry pick the priority debt he intends to pay through the Plan in order to support his new family to his former Wife's detriment.

Upon conclusion of the parties' evidence and closing arguments, the matter was taken under submission and is now ripe for determination.

## Analysis

The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (L). Venue is proper pursuant to 28 U.S.C. § 1409.

The Wife, as the party seeking to have the debt classified as a domestic support obligation for the purpose of priority status under § 507(a), bears the burden of proof by a preponderance of the evidence to show that her claim is entitled to priority. *See In re Clark*, 441 B.R. 752, 755 (Bankr. M.D. N.C. 2011): *In re Catron*, 164 B.R. 912, 916 (E.D. Va. 1994), *aff'd*, 43 F.3d 1465 (4th Cir. 1994). The Wife meets her burden.

The priority of debt under the Code is governed by 11 U.S.C. § 507. Section 507(a)(1) states in material part:

> (a) The following expenses and claims have priority in the following order:
>
> (1) First:
>
> (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.

The term "domestic support obligation" is defined in § 101(14A). Pursuant to § 101(14A):

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
>
> > (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

7

> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of —
>> (i) a separation agreement, divorce decree, or property settlement agreement;
>>
>> (ii) an order of a court of record; or
>>
>> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

The parties agree that the test set forth in *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir. 1983) applies to determine whether the debt is a DSO pursuant to § 101(14A) and is therefore entitled to priority under § 507(a)(1). In *Calhoun*, the Sixth Circuit addressed the issue of whether the assumption of five loan obligations by a debtor spouse pursuant to a separation agreement between him and his former wife were in the nature of support or alimony and therefore nondischargeable. In examining the issue, the Sixth Circuit held that whether a debt is a DSO is a matter of federal law. *Id. at* 1109.

The Sixth Circuit instructed that the first question a bankruptcy court should ask to determine whether a debt is a DSO is whether the state court or the parties to the divorce intended to create an obligation to provide support. *Id.* If the bankruptcy court determines that the court or the parties created the debt with the intent to create a support obligation, then the bankruptcy court must next determine whether the debt has "the effect of providing the support necessary to ensure the daily needs of the former spouse and any children of the marriage are

8

satisfied." *Id.* Finally, if the bankruptcy court answers this second question in the affirmative, it should determine whether "the amount of support represented…is not so excessive that it is manifestly unreasonable under traditional concepts of support." *Id.* at 1110.

Ten years later, the Sixth Circuit re-examined *Calhoun* and determined that the *Calhoun* standard was applied too expansively.  The Sixth Circuit held that the "present needs" of the non-debtor spouse should not be considered when the obligation was intended as support.  *See In re Fitzgerald*, 9 F.3d 517, 520 (6th Cir. 1993).  The Sixth Circuit distinguished between a case involving a direct payment between spouses from that which involved a third-party debt assumption, and found the "only question is whether something denominated as alimony is really alimony, and not, for example, a property settlement in disguise." *Id.* at 521.

Five years later, the Sixth Circuit again examined the precedent set in *Calhoun* and *Fitzgerald* in the matter of *In re Sorah*, 163 F.3d 397 (6th Cir. 1998).  The case of *Sorah*, like *Fitzgerald* and the case herein, involved a divorce decree that required the debtor spouse to make direct payments designated as "maintenance."  The payments in *Sorah* were structured to cease upon the non-debtor spouse's death, remarriage, or 62nd birthday, whichever first occurs.  The bankruptcy court, in reviewing the debt awarded by the state court, determined that the payments were not in the nature of support, but were intended to punish the debtor spouse for his alleged marital infidelity.  *In re Sorah*, 163 F.3d at 339.

After examining the precedent set in *Calhoun* and *Fitzgerald*, the Sixth Circuit concluded in *Sorah* that the bankruptcy court's inquiry and conclusion were improper.  According to the Court, the proper inquiry by the bankruptcy court is whether, based on traditional state law indicia, the obligation at issue is consistent with a support obligation.  The Sixth Circuit instructed that the factors that the bankruptcy court should review include, but are not limited to, the following: (1) whether the obligation is labeled as alimony, support, or maintenance in the decree or agreement; (2) whether the obligation is a direct payment to the former spouse, as

9

opposed to the assumption of a third-party debt; and (3) whether payments are contingent upon such events as death, remarriage, or eligibility of Social Security benefits. *Id. at* 401. "An award that is designated as support by the state court and that has the above indicia of a support obligation (along with any others that the state support statute considers) should be conclusively presumed to be a support obligation by the bankruptcy court." *Id.* If so, the burden then shifts to the debtor spouse to demonstrate that the amount is unreasonable in light of the debtor spouse's financial circumstances. *Id.*

Neither *Calhoun*, *Fitzgerald*, or *Sorah* were determined pursuant to the amendments of the Bankruptcy Reform Act of 1994, which amended § 523 to make most divorce-related debts nondischargeable pursuant to § 523(a)(15), or BAPCPA.[3] But this issue was recently addressed twice by a bankruptcy court in this Circuit and affirmed on appeal. In *Kassicieh v. Battisti (In re Kassicieh)*, 425 B.R. 467, 476-477 (Bankr. S.D. Ohio 2010) ("Kassicieh I"), the bankruptcy court of the Southern District of Ohio noted that "[m]ost courts interpreting § 101(14A) have not deviated from the rationale expressed in pre-BAPCPA case law that, in analyzing the dischargeability of debts payable to a third party, it is the nature of the debt rather than the identity of the creditor, that controls – even if the debtor and non-debtor party are not jointly liable to the third party for the obligation." The same court later relied on *Kassicieh I* in holding that fees owed to a guardian *ad litem* is a DSO as defined under § 101(14A). *Kassicieh v. Battisti* (*In re Kassicieh)*, 467 B.R. 445, 450 (Bankr. S.D. Ohio 2012) ("Kassicieh II"). The court's decision in *Kassicieh II* was appealed and the Sixth Circuit Bankruptcy Appellate Panel agreed with its analysis, thereby confirming that the pre-BAPCPA law of *Calhoun*, *Fitzgerald*, or *Sorah* is still controlling. *See Kassicieh v. Battisti (In re Kassicieh)*, 482 B.R. 190, 191 (6th Cir. BAP 2012).

---

[3] *Sorah* was decided after the effective date of the Bankruptcy Reform Act of 1994, but the amendments created by the Act were not applicable because the case was filed before the Act's effective date. *In re Sorah*, 163 F.3d at 401.

Considering the factors reviewed by the Sixth Circuit in *Calhoun*, *Fitzgerald*, and *Sorah*, all the evidence presented to the Court supports characterizing this debt as a DSO. The Divorce Decree is a judgment entered by the Tennessee State Court with the clear intention to create a support obligation based on the financial disparity between the parties. The Divorce Decree labels the debt as "maintenance" and awards the debt as a direct monthly payment from the Husband to Wife. The State Court granted the divorce on the basis of the Husband's "financial irresponsibility" that precipitated the filing of the parties' joint Chapter 13 bankruptcy. The evidence shows that the Wife funded the parties' Chapter 13 plan without the Husband's assistance. In doing so, she paid $113,000.00 of her Husband's debt, or 93% of the total payments made into the Plan. This clearly left the Wife at a financial disadvantage at the time of the divorce and unable to sustain even a meager lifestyle without support from her Husband, a fact that was obviously apparent to the State Court. For this reason, the State Court ordered the Husband to make monthly maintenance payments until he satisfied his portion of the debt paid by the Wife through the prior Chapter 13 bankruptcy. Thus, although the payments are not contingent upon such events as death, remarriage, or eligibility of Social Security benefits, they are not infinite either, but shall cease upon the Husband's payment of his debt from the prior bankruptcy.

Moreover, the Husband has not shown that the $700.00 monthly maintenance payment is unreasonable. The Husband's Schedules I & J support the Husband's ability to make the payments to the Wife. The Husband complains that he was "railroaded" in the divorce. Although the Husband was not represented at the time the Divorce Decree was entered, he had the opportunity to retain counsel and participate in the divorce proceedings and chose not to participate to his own detriment. While it is true that her Husband appeared to be unemployed at the time of the Divorce and thus making less income than his employed Wife, it is also equally clear that the Husband had a greater earning potential than his Wife and that his income

at the time of the divorce was underreported. The Husband's testimony is not credible and he has offered no evidence that the debt is unreasonable in light of his financial circumstances.

The Wife's characterization of the debt as a DSO entitled to priority status is appropriate. The Husband has offered no credible evidence to refute the Wife's characterization of this debt as a debt in the nature of alimony, maintenance, or support. The Wife has met her burden of proof.

### Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that the Husband's Objection [Doc. 20] to the Wife's Claim [POC #6-1] is OVERRULED. The Wife's Claim is an allowed domestic support obligation as defined by 11 U.S.C. § 101(14A) that is entitled to priority status under § 507(a)(1).

Copies To:

John M. Schultz, Esq.

T. Martin Jennings, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge
Dated: Friday, January 25, 2013
(tnw)**